EAST NEW YORK SAVINGS BANK, Plaintiff, *v.* ALVIN W. HAHN et al., Defendants.

Supreme Court, Special Term, Kings County, July 31, 1944.

*John P. McGrath* and *John J. Buckley* for plaintiff.

*Coller & Coller* for Alvin W. Hahn and another, defendants.

*Nathaniel L. Goldstein, Attorney-General,* for People of the State of New York, defendant.

FENNELLY, J. This is an action commenced by the plaintiff on March 27, 1944, to foreclose a mortgage upon real estate. The only default is as to the principal amount, which became due April 1, 1924, and the due date of which has not been extended. Interest, taxes and the amortization as provided by chapter 93 of the Laws of 1943 (eff. March 11, 1943) have been paid. It is the plaintiff's contention that this latter enact-

ment, which extended the mortgage moratorium and covered this mortgage, was invalid and unconstitutional at the time it became a law, or at any rate at the time of the commencement of this action.

If plaintiff is correct in its position, judgment of foreclosure must be granted.

The legislation attacked impairs the obligations of the mortgage contract. It can only be sustained as a proper exercise of the police power, if the emergency which originally called the mortgage moratorium into being in 1933 (L. 1933, ch. 793, § 1) existed at the time of its enactment and at the time of the commencement of this action and that the emergency was a temporary one. At the time of the 1943 renewal of the moratorium legislation which extended it to July 1, 1944, the Legislature made the finding that, in its judgment, the public emergency of 1933 still continued and existed. It provided for an amortization of 1%. (Subsequently the 1944 Legislature, in again renewing for a year the mortgage moratorium law, provided for an amortization of 2% [L. 1944, ch. 562].) The question of whether or not these amortization provisions to alleviate the situation of mortgagees kept pace with improvement in conditions, is not before the court, and no observation will be made thereon.

While great respect must be given the legislative declaration of the continued existence of the emergency, the question of whether it still existed is always open to judicial inquiry. (*Home Bldg. & L. Assn.* v. *Blaisdell,* 290 U. S. 398.)

A careful and exhaustive preparation of this case has been made by plaintiff's counsel. It is shown that there are ample funds available for mortgage investment. As of January 1, 1944, the amount invested by savings banks in mortgages in New York State was slightly less than three billion dollars, and there was available for mortgage lending within the 65% of assets limit provided by law a sum in excess of one billion dollars.

The mortgage market is, of course, inseparably connected with the real estate market. Testimony was submitted by plaintiff that can well be credited, that the real estate market in 1943 was active and gave indications of being more active in 1944. The testimony shows, and it is a matter of common knowledge, that much foreclosed institutional real estate has been liquidated. For the purpose of collecting and distributing mortgage and real estate information to the savings banks supporting the service, New York State is divided into groups. Group 5 embraces Long Island and Staten Island. The chief

statistician of this group prepared figures showing real estate holdings of this group that resulted from mortgage investments. The figures show that member banks in Brooklyn had an overhang of real estate as of the end of 1939 of $49,360,469; and as of January 1, 1944, of $17,105,680. In Queens the figures were at the end of 1939, $9,808,417; and as of January 1, 1944, $3,857,742. In Nassau the figures were at the end of 1939, $2,487,143; and as of January 1, 1944, $495,952. There is still to be liquidated, and was at the time of the commencement of this action, a considerable amount of real estate held by savings banks, insurance companies, Home Owners' Loan Corporation and the trustees of estates. Not until the holdings of these unwilling owners of real estate have been reduced, so that they are no longer a factor in competition with the real estate of those who willingly acquired real estate and are willing but not forced to sell, can it be said that there is a normal real estate market.

The Legislature had the right, in its judgment, to determine that abnormal deflation of real property values, in view of these circumstances, existed at the time it enacted the renewal legislation of 1943. This was one of the reasons upon which the original moratorium legislation of 1933 was based. The emergency, in the court's opinion, still existed at the time this action was commenced.

Plaintiff's counsel advances the argument that no alleged emergency of eleven years' duration can be considered temporary. But time is relative. The conditions which created the emergency are righting themselves. The testimony of the statistician for Group 5 shows that, in this area, from 1933 to 1938 foreclosures exceeded new loans and that from then on the reverse was the case. Liquidation of institutional properties has been steadily going on. The time can reasonably be foreseen when they will no longer be a competitive factor in the real estate market.

The motion made by defendants at the end of plaintiff's case to dismiss the complaint, upon which decision was reserved, is granted, with an exception to plaintiff. Submit judgment upon two days' notice of settlement.

Pleadings and exhibits may be had from the clerk.