EAST NEW YORK SAVINGS BANK *v.* HAHN ET UX.

No. 62.  Argued October 18, 1945.—Decided November 5, 1945.

*Mr. John P. McGrath* for appellant.

*Orrin G. Judd,* Solicitor General of New York, for appellees.

Briefs were filed by *Nathaniel L. Goldstein,* Attorney General of New York, *Orrin G. Judd,* Solicitor General, and *Saul A. Shames,* Assistant Attorney General, on behalf of the State of New York, as *amicus curiae,* urging affirmance; and by *Mr. George R. Fearon* on behalf of the Savings Banks Association of the State of New York, as *amicus curiae,* urging reversal.

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

This was an action begun in 1944 to foreclose a mortgage on real property in the City of New York for non-

payment of principal that had become due in 1924. The trial court held that the foreclosure proceeding was barred by the applicable New York Moratorium Law. 182 Misc. 863, 51 N. Y. S. 2d 496. This Law, Chapter 93 of the Laws of New York of 1943, extended for another year legislation first enacted in 1933, whereby the right of foreclosure for default in the payment of principal was suspended for a year as to mortgages executed prior to July 1, 1932.[1] Year by year (except in 1941 when an extension for two years was made), the 1933 statute was renewed for another year. The New York Court of Appeals, one judge dissenting, affirmed the trial court's judgment. 293 N. Y. 622, 59 N. E. 2d 625. Upon claim duly made below that the Moratorium Law of 1943 was repugnant to the Contract Clause of the Constitution of the United States, Art. I, § 10, the case is here on appeal under § 237 (a) of the Judicial Code, 28 U. S. C. § 344 (a). The validity of the statute is likewise challenged under the Fourteenth Amendment but too feebly to merit consideration.

Since *Home Bldg. & L. Assn.* v. *Blaisdell,* 290 U. S. 398, there are left hardly any open spaces of controversy concerning the constitutional restrictions of the Contract Clause upon moratory legislation referable to the depression. The comprehensive opinion of Mr. Chief Justice Hughes in that case cut beneath the skin of words to the core of meaning. After a full review of the whole course of decisions expounding the Contract Clause—covering almost the life of this Court—the Chief Justice, drawing on the early insight of Mr. Justice Johnson [2] in *Ogden* v.

---

[1] The 1943 Moratorium Law made the payment of interest, taxes, insurance, and amortization charges a prerequisite to suspension of foreclosure. These conditions concededly were met and the only default here was in unpaid principal.

[2] For Mr. Justice Johnson's constitutional views regarding the scope and limits of the Contract Clause, see Morgan, *Mr. Justice William*

*Saunders*, 12 Wheat. 213, 286, as reinforced by later decisions cast in more modern terms, *e. g.*, *Manigault* v. *Springs*, 199 U. S. 473, 480; *Marcus Brown Co.* v. *Feldman*, 256 U. S. 170, 198, put the Clause in its proper perspective in our constitutional framework. The *Blaisdell* case and decisions rendered since (*e. g.*, *Honeyman* v. *Jacobs*, 306 U. S. 539; *Veix* v. *Sixth Ward Assn.*, 310 U. S. 32; *Gelfert* v. *National City Bank*, 313 U. S. 221; *Faitoute Co.* v. *Asbury Park*, 316 U. S. 502), yield this governing constitutional principle: when a widely diffused public interest has become enmeshed in a network of multitudinous private arrangements, the authority of the State "to safeguard the vital interests of its people," 290 U. S. at 434, is not to be gainsaid by abstracting one such arrangement from its public context and treating it as though it were an isolated private contract constitutionally immune from impairment.

The formal mode of reasoning by means of which this "protective power of the State," 290 U. S. at 440, is acknowledged is of little moment. It may be treated as an implied condition of every contract and, as such, as much part of the contract as though it were written into it, whereby the State's exercise of its power enforces, and does not impair, a contract. A more candid statement is to recognize, as was said in *Manigault* v. *Springs, supra*, that the power "which in its various ramifications is known as the police power, is an exercise of the sovereign right of the Government to protect the . . . general welfare of the people, and is paramount to any rights under contracts

*Johnson and the Constitution* (1944) 57 Harv. L. Rev. 328, 352 *et seq.*, and Hale, *The Supreme Court and the Contract Clause: III* (1944) 57 Harv. L. Rev. 852, 872 *et seq.* See also Levin, *Mr. Justice William Johnson and the Unenviable Dilemma* (1944) 42 Mich. L. Rev. 803; *Mr. Justice William Johnson, Creative Dissenter* (1944) 43 Mich. L. Rev. 497; *Mr. Justice William Johnson and the Common Incidents of Life* (1945) 44 Mich. L. Rev. 59.

between individuals." 199 U. S. at 480. Once we are in this domain of the reserve power of a State we must respect the "wide discretion on the part of the legislature in determining what is and what is not necessary." *Ibid.* So far as the constitutional issue is concerned, "the power of the State when otherwise justified," *Marcus Brown Co.* v. *Feldman,* 256 U. S. 170, 198, is not diminished because a private contract may be affected.

Applying these considerations to the immediate situation brings us to a quick conclusion. In 1933, New York began a series of moratory enactments to counteract the virulent effects of the depression upon New York realty which have been spread too often upon the records of this Court to require even a summary. Chapter 793 of the Laws of 1933 gave a year's grace against foreclosures of mortgages, but it obligated the mortgagor to pay taxes, insurance, and interest. The validity of the statute was sustained in *Klinke* v. *Samuels,* 264 N. Y. 144, 190 N. E. 324. The moratorium has been extended from year to year. When the 1937 reenactment was questioned, the New York Court of Appeals again upheld the legislation. *Maguire & Co.* v. *Lent & Lent, Inc.,* 277 N. Y. 694, 14 N. E. 2d 629. This decision was rendered after a joint legislative committee had made a thorough study and recommended continuance of the moratorium. New York Legislative Document (1938) No. 58. In 1941, the Legislature reflected some changes in economic conditions by requiring amortization of the principal at the rate of 1% per annum, beginning with July 1, 1942. The same legislature established another joint legislative committee to review once more the New York mortgage situation. "After a most exhaustive study of the moratorium," a report was submitted recommending its extension for another year. New York Legislative Document (1942) No. 45. The Governor of New York urged such legislation (New York Legislative Document (1943) No. 1,

p. 9) and the Law now under attack was enacted. It is relevant to note that the New York Legislature in subsequent extensions of the moratorium again took note of changed economic conditions by increasing the amortization rate to 2% in 1944 (L. 1944, c. 562) and to 3% in 1945 (L. 1945, c. 378).

Appellant asks us to reject the judgment of the joint legislative committee, of the Governor, and of the Legislature, that the public welfare, in the circumstances of New York conditions, requires the suspension of mortgage foreclosures for another year. On the basis of expert opinion, documentary evidence, and economic arguments of which we are to take judicial notice, it urges such a change in economic and financial affairs in New York as to deprive of all justification the determination of New York's Legislature of what New York's welfare requires. We are invited to assess not only the range and incidence of what are claimed to be determining economic conditions insofar as they affect the mortgage market—bank deposits and war savings bonds; increased payrolls and store sales; available mortgage money and rise in real estate values— but also to resolve controversy as to the causes and continuity of such improvements, namely the effect of the war and of its termination, and similar matters. Merely to enumerate the elements that have to be considered shows that the place for determining their weight and their significance is the legislature not the judiciary. Unlike *Worthen Co.* v. *Kavanaugh,* 295 U. S. 56, 60, here there was no "studied indifference to the interests of the mortgagee or to his appropriate protection." Here the Legislature was not even acting merely upon the pooled general knowledge of its members. The whole course of the New York moratorium legislation shows the empiric process of legislation at its fairest: frequent reconsideration, intensive study of the consequences of what has been done, readjustment to changing conditions, and safeguarding the

future on the basis of responsible forecasts. The New York Legislature was advised by those having special responsibility to inform it that "the sudden termination of the legislation which has dammed up normal liquidation of these mortgages for more than eight years might well result in an emergency more acute than that which the original legislation was intended to alleviate." New York Legislative Document (1942) No. 45, p. 25. It would indeed be strange if there were anything in the Constitution of the United States which denied the State the power to safeguard its people against such dangers. There is nothing. Justification for the 1943 enactment is not negatived because the factors that induced and constitutionally supported its enactment were different from those which induced and supported the moratorium statute of 1933.

It only remains to say that in *Chastleton Corp.* v. *Sinclair,* 264 U. S. 543, which was strongly pressed on us, the Court dealt with quite a different situation. The differentiating factors are too glaring to require exposition.

*Judgment affirmed.*

MR. JUSTICE RUTLEDGE concurs in the result.

MR. JUSTICE JACKSON took no part in the consideration or decision of this case.