FELIPE ÁVILA, Petitioner, *v.* DISTRICT COURT OF SAN JUAN, Respondent; CARLOS S. HERNÁNDEZ, Intervener.

No. 1729. Argued December 9, 1947.—Decided January 13, 1948.

---

*Vicente Géigel Polanco* for petitioner.    *R. Arjona Siaca* and *Figueroa Rivera* for intervener, plaintiff in the main action.

MR. JUSTICE SNYDER delivered the opinion of the Court.

The Federal Housing and Rent Act of 1947 enables a landlord to evict a tenant to live in a dwelling himself.   Insular legislation has provided certain additional requirements and conditions if a landlord files such a suit in the local courts.   The cases before us require a determination of the

12

effect of this local legislation. The problem will be better understood if it is examined in the light of the history of rent control since 1942.[1]

██ In § 2(b) and (d) of the Emergency Price Control Act of 1942, which was in effect from 1942 until June 30, 1947, Congress authorized the Administrator (1) to fix maximum rents for housing accommodations and (2) to restrict or prohibit eviction practices likely to result in rent increases. 50 U.S.C.A. App. § 902(b), (d). The Act contained no specific prohibition of local rent control laws, except that for a brief period—from July 25, 1946 to June 30, 1947—§ 2(b) provided that "While maximum rents are in effect under this Act with respect to housing accommodations in any defense-rental area, such housing accommodations shall not be subject to rent control by any State or local government."

The Administrator established maximum rents and restrictions of evictions in Puerto Rico under the Emergency Price Control Act. He also provided by Regulation 6(a)(6) that a landlord may not evict a tenant unless he needed the property to live in himself. It is important to note that the content of all the other regulations for restriction of evictions was left to the discretion of the Administrator, whereas Regulation 6(a)(6) alone was required by the Act. The Administrator was compelled to promulgate Regulation 6(a)(6) precisely because § 4(d) of the Act provided, probably for constitutional reasons, that "Nothing in this Act shall be construed to require any person to sell any commodity or offer any accommodation for rent."

Act No. 464, Laws of Puerto Rico, 1946, known as "The Reasonable Rents Act", was approved on April 25, 1946. Section 12(f) thereof, among other things, originally pro-

---

[1] For reasons discussed hereinafter, this opinion covers not only the above-entitled case, but also Certioraris Nos. 1733, *Torres* v. *Tribunal; Torres, Intervener;* 1734, *Fernández* v. *Tribunal; Silva, Intervener;* and 1736, *Soler* v. *Tribunal; Roger, Intervener.*

vided, despite § 4(d) of the Federal Act and Regulation 6(a)(6), that a landlord could not evict a tenant from his property in order to live in it himself if the property had been "habitually" rented in the past.

We held in *Latoni* v. *Municipal Court*, 67 P.R.R. 130, that the requirement that the property shall not have been previously "habitually" rented was a rent control law; that it therefore violated the July 25, 1946 amendment of § 2(b) of the Federal Act specifically prohibiting local rent control laws; and, consequently, that § 12(f) to that extent was inoperative between July 25, 1946 and June 30, 1947, when the Federal Act expired.

The Emergency Price Control Act was succeeded, insofar as rent control was concerned, by the Housing and Rent Act of 1947, which took effect on July 1, 1947 and which, unless extended, expires on February 29, 1948. Pub. L. 129, 80th Congress, 1st Sess. Section 211 of this Act provides that it shall apply to the Territories and possessions of the United States, which of course includes Puerto Rico. With changes not relevant here, Congress established maximum rents in the 1947 Act. And recognizing, as we pointed out in detail in the *Latoni* case, that rent ceilings to be effective must be coupled with anti-eviction provisions, Congress also provided for restriction of evictions.

But Congress was no longer willing to provide as in the earlier Acts for an administrator with broad authority to restrict evictions by regulation. Instead, it established in § 209(a) of the Act itself the restrictions of evictions and the grounds therefor; and in doing so it deprived the administrator now known as the Housing Expediter—of all power to promulgate regulations in connection with evictions. Again it is important to note that Congress, as in § 4(d) of the earlier Act and Regulation 6(a)(6)—still probably for constitutional reasons—repeated in § 209(a)(2) the pattern of § 4(d) of the earlier Acts and specifically provided that a

14

landlord may recover possession of a dwelling for personal occupancy.[2]

Under the Emergency Price Control Act the Administrator promulgated regulations which required the giving of notice to the area rent offices and to the tenants where the landlord sought eviction of a tenant upon one of the grounds permitted by the regulations. In the case of a dwelling sold to a person who desired to occupy it himself, the regulations provided that the Administrator shall issue a certificate authorizing the landlord to evict the tenant in accordance with the procedure laid down by local law, usually after a waiting period which was originally 3 months, but was later extended to 6 months.

All these regulations were terminated by the Housing and Rent Act. No certificate of the Housing Expediter or notice to him is now required as a condition precedent to an unlawful detainer suit in the local courts. Complete control of eviction proceedings is therefore now in the local courts. But it need hardly be said that the local courts must apply the law as written by Congress relating to restrictions of evictions and the grounds therefor. See *Testa* v. *Katt*, 330 U.S. 386.[3]

[2] That Section reads in part as follows:

"Sec. 209(a). No action or proceeding to recover possession of any controlled housing accommodations with respect to which a maximum rent is in effect under this title shall be maintainable by any landlord against any tenant in any court, notwithstanding the fact that the tenant has no lease or that his lease has expired, so long as the tenant continues to pay the rent to which the landlord is entitled unless—

"(1) *under the law of the State* in which the action or proceeding is brought the tenant is (A) violating the obligation of his tenancy (other that an obligation to pay rent higher than rent permitted under this Act or an obligation to surrender possession of such housing accommodations) or (B) is committing a nuisance in such housing accommodations or using such housing accommodations for an immoral or illegal purpose or for other than living or dwelling purposes;

"(2) the landlord seeks in good faith to recover possession of such housing accommodations for his immediate and personal use and occupancy as housing accommodations;" (Italics ours).

[3] S. Rep. No. 86, 80th Congress, 1st Sess., points out that under the new Act "landlords will not be required in any case to give notice to or obtain any certificate from any agency of the Federal Government before bringing eviction proceedings. The provisions of the bill will be applied by the local courts in passing upon eviction cases brought before them."

After the *Latoni* case was decided, the Legislature on July 22, 1947 amended. § 12(*f*) of the insular Act. Act No. 36, Laws of Puerto Rico, 1947, Special Seccion. It eliminated the requirement under attack in that case; namely, a landlord who wishes to live in the dwelling himself must establish that the property shall not have been previously "habitually" rented. However, § 12(*f*) still requires a landlord wishing to obtain the dwelling to live in it himself to satisfy certain requirements not found in § 209(*a*)(2) of the Federal Housing and Rent Act: (1) the landlord must have acquired the property prior to April 25, 1946, the date when the insular Act was originally enacted; (2) he has no other suitable property in the same locality in which to establish his residence; and (3) he has not lived in a house belonging to himself for a year prior to filing his suit.[4]

---

[4] Section (*f*) as amended reads as follows:

"When the landlord has acquired the dwelling prior to April 25, 1946, and shows to the satisfaction of the court that he is trying in good faith to recover the property, in whole or in part, for immediate use and personal occupation of same, provided he has no other suitable property in the same locality in which to establish his residence, and that he has not lived in a house of his property for at least one year prior to the filing of an action of unlawful detainer; *Provided,* That in such case the court shall not issue the writ of ejectment until after giving the tenant a reasonable term under the present emergency to obtain another lodging, it being understood that in no case shall the term be less than forty (40) or more than one hundred eighty (180) days; *Provided, further,* That every landlord who, under the terms of this subdivision, obtains an ejectment under the allegation that he seeks the possession of the leased property to establish therein his residence, for the purpose of defeating the right of the tenant to continue occupying the property, if he does not establish his residence in said property within the thirty (30) days following the date on which the tenant vacates the property, or if he cedes or leases it to another person within the twelve (12) months following the date on which the tenant has vacated it, shall be guilty of a misdemeanor and shall, upon conviction, be punished by a fine of not less than two hundred (200) nor more than five hundred (500) dollars, or by imprisonment in jail for a term of not less than thirty (30) nor more than ninety (90) days, or by both penalties in the discretion of the court; *Provided, also,* That in any such case, the affected tenant shall be entitled to an indemnity from the landlord for the damages caused him, which damages shall be fixed in an amount which in no case shall be less than one hundred (100) dollars or less than three (3) times the amount of the monthly rent, whichever of these sums is the larger, plus the plaintiff's attorney's fees and costs, as fixed by the court; *Provided, finally,* That as soon as the tenant vacates any leased rental premises, the owner may withdraw said premises from the renting business."

16

If the *Latoni* case were still controlling, even as amended § 12(*f*) would be inoperative because it is a rent control law. But the Housing and Rent Act does not contain a provision similar to the July 25, 1946 amendment of § 2(*b*) of the Emergency Price Control Act specifically prohibiting local rent control laws. The holding of the *Latoni* case is therefore no longer in point.

▮▮▮▮ In the absence of a specific prohibition in a Federal Act against local legislation, the insular Government may exercise concurrent power by enacting, under its police power, legislation covering the same subject-matter, provided the subject-matter is not so intimately blended and intertwined with responsibilities of the national Government that the very nature of the subject-matter in itself raises an inference that it is an exclusive concern of the national Government. *Bethlehem Co.* v. *State Board,* 330 U. S. 767, 772; *Hines* v. *Davidowitz,* 312 U. S. 52, 66; *Hill* v. *Florida,* 325 U. S. 538, 542; Grant, The Scope and Nature of Concurrent Power, 34 Col. L. Rev. 995.

Rent control is not so inextricably a national responsibility that the subject-matter as such requires us to hold that Congress, once it legislates on the subject, intends to occupy the field exclusively despite the failure of the Federal statute to prohibit specifically a local statute on the same subject. See *People* v. *Leandry,* 67 P.R.R. 618; *People* v. *Vidal,* 67 P.R.R. 710; *Panhandle Eastern Co.* v. *Comm'n.,* 332 U. S. 507. Consequently, in view of the absence of a specific prohibition in the Housing and Rent Act against a local rent control law, the insular Legislature after July 1, 1947 could enact a rent control statute which supplemented the Federal Act, provided our Act was not in substantial conflict with the Federal Act. *Puerto Rico* v. *Shell Co.,* 302 U. S. 253; *Latoni* v. *Municipal Court, supra,* 130, footnote 1, paragraph 2; *Irizarry* v. *District Court,* 64 P.R.R. 90; *Ballester Hnos.* v. *Tax Court,* 66 P.R.R. 531, 547, footnote 17, reversed on other grounds, 162 F. (2) 805 (C.C.A. 1st, 1947), cert. denied,

332 U. S. 816; *Luce & Co.* v. *Minimum Wage Board,* 62 P.R.R. 431; *Sucesores de José Fernández, S. en C.,* v. *Domenech, Treas.,* 60 P.R.R. 883, 888; *Walz* v. *Lavelle,* 70 N.E. (2) 373, 375, (Ohio, 1946).

What constitutes such a substantial conflict? The Supreme Court has said that the conflict or repugnance must be so direct and positive that the two Acts cannot be reconciled or consistently stand together. *Kelly* v. *Washington,* 302 U. S. 1, 10. Or stated another way, the local statute must not stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. *Hill* v. *Florida, supra,* 542; *Hines* v. *Davidowitz, supra,* 67; *Allen-Bradley Local* v. *Board,* 315 U. S. 740, 749.

We come to the cases at bar, which must be decided against this background of statutory and case law. In these four cases the district court held in effect that, despite the failure of the Housing and Rent Act to prohibit local rent laws, § 209 (a)(2) of the Federal Act created a right in a landlord to evict a tenant in order to occupy a dwelling personally which could not be abridged by § 12(*f*) of the insular Act, which imposes additional requirements, not included in § 209(a)(2), as conditions precedent for the exercise of that right.

We need not state the facts of the four cases in detail. It is sufficient to state that the facts in some of them make it necessary to determine if a landlord who does not allege and prove any of the three additional requirements of § 12(*f*) is nevertheless entitled, by virtue of §209(a)(2) of the Federal Act, to evict a tenant in order to occupy a dwelling himself. We granted certiorari to determine if the district court erred in these cases, which came to it on appeal from the municipal court, in refusing to suspend the proceedings pursuant to § 12 of the insular Act, which provides for suspension of proceedings which do not conform to the terms of our Act.

We begin by pointing out that the insular Legislature has exclusive control of the remedy and procedure it desires to provide for unlawful detainer suits. It may make the procedure summary or ordinary. And it may provide reasonable periods of time for such things as pleadings and steps of execution. The provision in § 12(f) as amended that a tenant is entitled to not less than 40 or more than 180 days to obtain another lodging comes within this category. This does not conflict with § 209 (a)(2). It is merely supplementary thereof. Moreover, it is eminently reasonable: under Regulation 6(a)(6) such a tenant was entitled to a stay of 6 months. Likewise, the provisions in § 12(f) for criminal penalty and civil suits against a landlord who after evicting a tenant does not occupy the property himself or rents it to another person are not in conflict with § 209(a)(2) and are therefore valid. See *Irizarry* v. *District Court,* 64 P.R.R. 90.

But the other provisions of § 12(f) stand on a different footing. We do not pass on the extent to which the Legislature may attach additional substantive requirements when a landlord seeks to evict a tenant on the grounds set forth in § 209(a)(1). The only question before us is narrow. It is whether the Legislature may validly provide between July 1, 1947 and February 29, 1948 that a landlord may not oust a tenant to occupy a dwelling himself, as he is entitled to do under § 209(a)(2), unless he can also comply with the requirements of § 12(f) that (1) the landlord acquired the property prior to April 25, 1946; (2) he has no other suitable place in which to live; and (3) he has not lived in a house of his own for a year prior to filing his suit.

Congress apparently had serious doubts as to its power to require a landlord to continue to rent a dwelling to a tenant without a lease for a fixed term when the landlord wished to obtain possession to occupy the dwelling himself. See *Latoni* v. *Municipal Court, supra,* 130, footnote 1, paragraph 1, and cases cited there. Even under the earlier Acts, in which all other phases of evictions were left to the Ad-

ministrator, Congress specifically conferred on landlords this right without any qualifications whatsoever. And the present Federal Act, which deprives the Housing Expediter of all authority to regulate evictions and instead specifically sets up grounds for eviction in the Act itself, repeats this ground for eviction.

Moreover, it is significant that Congress, in setting up in § 209(a)(2) the right of a landlord to evict a tenant to live in a dwelling himself, did not provide that this right shall be available to the landlord only if it exists under the law of the State. Section 209(a)(2) flatly establishes this ground for eviction without reference to local law. This contrasts with § 209(a)(1), where the grounds for eviction must arise under the law of the State.

The Federal statute in § 209(a)(2) establishes affirmatively and without qualification an explicit ground for eviction. It gives a landlord a right to obtain possession of a dwelling to occupy it himself. The insular Legislature is free to provide any reasonable remedy or procedure it chooses for the exercise of that right. And the landlord must exercise his right pursuant to the procedure and the remedy provided by local law. But the Legislature cannot abridge or fetter this substantive right and thereby create a substantial conflict with the Federal statute by providing as it has here for additional substantive requirements as conditions precedent for the existence of the right itself.

It is plain that the three additional requirements in §12(f) of the insular Act are not procedural. Rather they are affirmative restrictions on the ground for eviction created by § 209(a)(2) of the Federal Act. In the *Latoni* case we concluded that a somewhat similar restriction on evictions then found in § 12(f) of our Act was a rent control provision. In the same way, these three requirements are rent control provisions and impose conditions precedent on a right which otherwise could be freely exercised under the Federal Act. To that extent § 12(f) is in substantial conflict with

the Housing and Rent Act: the two Acts cannot be reconciled or consistently stand together; the local statute stands as an obstacle to the accomplishment and execution of the full purposes and objectives of the Federal Act. These three requirements of § 12 (f) are therefore inoperative while § 209 (a)(2) of the Federal Act remains in effect.[5]

The writs of certiorari will be discharged.

[5] As a result of the conclusion we have reached, we do not pass on the question of whether any substantive restrictions may be constitutionally imposed on a landlord seeking to evict a tenant without a lease for a fixed term in order to occupy a dwelling himself. This question can not arise until the present Federal Act is changed or expires. See *Latoni* v. *Municipal Court, supra,* 130, footnote 1, paragraph 1; cf. *Miranda* v. *District Court,* 63 P.R.R. 155.

The petitioner also contends that Act No. 464 is invalid because the emergency described therein is not limited in time. Section 23 provides that the Act shall "cease" when the Legislature by joint resolution declares the emergency ended. No one could seriously contend that the emergency in housing no longer exists here. We therefore find it unnecessary at this time to pass on this contention. Compare *The Chastleton Corp. et al.* v. *Sinclair,* 264 U. S. 543, and *Peck* v. *Fink,* 2 F.(2) 912 (C.C.A., D.C., 1924) with *East New York Savings Bank* v. *Hahn et ux.,* 326 U. S. 230, 234.