OKLAHOMA ALCOHOLIC BEVERAGE
CONTROL BOARD,
Appellant-Cross-Appellee,

v.

HEUBLEIN WINES, INTERNATIONAL,
Appellee-Cross-Appellant.

No. 49955.

Supreme Court of Oklahoma.

July 12, 1977.

Larry Derryberry, Atty. Gen. of Oklahoma, Daniel J. Gamino, Asst. Atty. Gen. of Oklahoma, for appellant-cross-appellee.

John B. Hayes, Watts, Looney, Nichols, Johnson & Hayes, Oklahoma City, for appellee-cross-appellant.

IRWIN, Justice:

The Oklahoma Alcoholic Beverage Control Board (Board) suspended the alcoholic beverage license (non-resident seller's) of Heublein Wines International (Heublein) for thirty days for the alleged violation of Art. 27, § 5,[1] of the Oklahoma Constitution, and 37 O.S.1971, § 516. These provisions, with one narrowly defined exception, prohibit advertising the sale of alcoholic beverages within the State of Oklahoma. Heublein was charged with permitting an Oklahoma television station to broadcast a commercial which advertised the sale of wines.

Heublein appealed Board's order to the district court and also sought a declaratory judgment declaring the above prohibitory provisions unconstitutional when measured against the provisions of the Commerce Clause of the U.S. Constitution. U.S. Const, Art. 1, § 8. The district court vacated Board's order of suspension because the evidence was insufficient to sustain a finding that Heublein was "guilty of any willful misconduct" which would justify a suspension or revocation of its license. It also found Oklahoma's laws which prohibit advertising the sale of alcoholic beverages were not an undue burden on interstate commerce and not in violation of the U.S. Constitution.

Board appealed that part of the trial court's order which vacated its suspension order. Heublein cross-appealed from that part which upheld the constitutionality of the advertising prohibitions.

Heublein is a national concern engaged in the importation and wholesale distribution of wines and liquors and is the holder of a nonresident seller's license. 37 O.S.1971, § 524(a).[2] Heublein purchased prime time television advertising on national networks as a part of its national marketing efforts. On three separate occasions television commercials originating as a part of national network programming, were televised in Oklahoma by local network affiliates. Either the national networks had failed to advise the local affiliate of the commercial or the local affiliate had inadvertently or mistakenly failed to "block out" that part of the national network commercials which advertised Heublein's products.

After the first of these telecasts, Board by letter notified Heublein, among other non-resident seller licensees, that national network affiliated stations in Oklahoma had been airing wine commercials. Approximately a year later, after a second such telecast, Board's Director conducted an informal inquiry into the appearance of Heublein's commercials on Oklahoma television. Board and Heublein stipulated that before Board's letter giving notice of possible violation of Oklahoma law and after that time, Heublein has continuously advised the television networks to take whatever steps were necessary to assure that Heublein's wine commercials would not be telecast by Oklahoma based affiliated stations. The record also demonstrates that in response to their advertiser's request, the national networks implemented a system of checks by which to assure notification to local affiliates of when and in what order Heublein's commercials would appear so they could be effectively "blocked out." Nevertheless, a third incident did occur and it was this last telecast of a Heublein wine commercial which resulted in the charge of unlawfully advertising and the subsequent thirty (30) day suspension.

■ The first issue presented is whether the trial court erred in holding Heublein had to be guilty of willful misconduct before its license could be suspended for unlawful advertising. The parties place in

---

1. Art. 27, § 5, of the Oklahoma Constitution, in part, provides: "It shall be unlawful for any person, firm or corporation to advertise the sale of alcoholic beverage within the State of Oklahoma, except one sign at the retail outlet bearing the words 'Retail Alcoholic Liquor Store'."

2. 37 O.S.1971, § 524(a) provides: "A nonresident seller's license shall be required of all out-of-state distillers, winemakers, brewers, importers, brokers and others who sell alcoholic beverages to wholesalers and Class B wholesalers in Oklahoma regardless of whether such sales are consummated within or without the State of Oklahoma."

issue 37 O.S.1971, § 524(c) and § 528(1)(a). Sec. 524(c) provides:

"The Board *may*, subject to the provisions of this Act requiring notice and hearing in the case of sanctions against holders of licenses, suspend or revoke a nonresident seller's license for *any* violation of this Act by the holder thereof." (Emphasis ours.)

Board contends that the above statute is a special statute relating to a non-resident seller's license only and that Heublein is subject to sanctions for *any* violation and the trial court erred in holding that the violation had to be "willful."

Heublein contends that § 524(c) is not applicable but the controlling provision is § 528(1)(a), which provides:

"Any license issued hereunder *shall*, by order of the Board, after due notice and hearing: (a) be revoked, or suspended for such period as the Board deems appropriate, if the Board finds that the licensee has wilfully violated any of the provisions of this Act".

Sec. 528, is a general provision governing the revocation or suspension of a license and under it the Board *shall* suspend or revoke "for such period as the Board deems appropriate" for a willful violation. Under § 524(c) the Board *may* suspend for *any* violation. Apparently Board proceeded under § 528 instead of § 524, because § 528 is mentioned in Board's "notice of Contemplated Suspension" and § 524 is not; and also, in its order of suspension, Board found Heublein did *wilfully allow and permit* the advertising. It is apparent that if Board's contentions are sustained sanctions may be imposed against a non-resident seller licensee for unintentionally doing certain acts whereas if the same acts were unintentionally done by a resident seller licensee, sanctions could not be imposed.

Extending this line of reasoning to another statutory provision we find that 37 O.S. 1971, § 536, which relates to price discrimination and rebates, makes no distinction between non-resident and resident seller licensees. However, if we follow Board's argument to its logical conclusion, Board could impose greater sanctions against a non-resident seller licensee for price discrimination under § 524(c) than it could impose against a resident seller licensee under § 536.

In our opinion, the Legislature did not intend and our statutes may not be construed as providing a different standard for the imposition of sanctions for non-resident seller licensees and resident seller licensees. We hold the trial court correctly determined that before sanctions could be imposed against Heublein for the complaint against it, Heublein had to be guilty of wilfully allowing and permitting the unauthorized television commercial. In the alternative, Board contends the evidence supports the suspension because Heublein "wilfully allowed and permitted the unauthorized advertisement."

 The record will not support a finding that Heublein wilfully allowed the unauthorized advertising. We are concerned here with nationwide network television programming which serves all fifty states. The programs and commercials emanate from the headquarters of network television companies and are transmitted to affiliated stations in Oklahoma and elsewhere. It is possible for affiliate stations to "block out" any part of the network's programming or commercials, provided the affiliates have sufficient advanced notice of the telecast. If it is not "blocked out," it is instantaneously transmitted via the broadcast towers of the affiliate stations. Those companies desiring to advertise their alcoholic products nationally generally rely on the national networks to accurately inform their Oklahoma affiliates concerning the exact time the commercials will be telecast and the affiliates then "block" them out. Heublein and other similarly situated will not purchase and the national networks will not accept alcoholic beverage advertising unless it will be "blocked out" by the affiliates in Oklahoma and Mississippi.[3] This is

---

**3.** The parties stipulated that Mississippi prohibits advertising the sale of alcoholic beverages.

so even though the national networks transmit their programs and commercials to all their affiliates or those located in a particular area.

There is no evidence that any person, directly or indirectly connected with the national networks, Oklahoma affiliates or with Heublein, intentionally or wilfully caused to be televised the unauthorized commercials forming the basis of the charge against Heublein. Nor will the evidence support a finding that Heublein was so negligent, careless or imprudent as to fail to make prompt inquiry and take such immediate action as was necessary to assure good faith compliance with the law. *Oklahoma Alcoholic Beverage Control Bd. v. Moss,* Okl., 509 P.2d 666 (1973). Although Heublein admitted the unauthorized telecasts, the evidence establishes that such telecasts were purely the product of mistake or inadvertence on the part of the national networks or their Oklahoma affiliates. The telecasts may not constitute grounds for suspension of Heublein's license.

■ We now turn to Heublein's contention that Oklahoma laws which prohibit advertising the sale of alcoholic beverages violate the Commerce Clause of the U.S. Constitution.

The Commerce Clause as traditionally construed by the United States Supreme Court prohibits state exercise of the police power in the regulation of business and industry so as to unreasonably burden commerce between the several states. *Oklahoma v. Kansas Natural Gas. Co.,* 221 U.S. 229, 31 S.Ct. 564, 55 L.Ed. 716, 35 L.R. A.,N.S., 1193 (1911). However, where the exercise of the police power involves alcoholic beverages, the Commerce Clause must be construed in connection with the Twenty-First Amendment of the United States Constitution,[4] which in part provides:

"The transportation or importation into any State, Territory or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."

The Supreme Court of the United States made it clear in the early years following the adoption of the Twenty-First Amendment that by virtue of its provisions a State is totally unconfined by traditional commerce clause limitations when it restricts the importation of intoxicants destined for use, distribution, or consumption within its borders. *Heublein v. South Carolina Tax Commission,* 409 U.S. 275, 93 S.Ct. 483, 34 L.Ed.2d 472.

Heublein contends that advertising via network television is not "transportation or importation into Oklahoma" of intoxicating liquors. Heublein argues network televising is pure and simple interstate advertising and a state may not enact laws which have an "extraterritorial" application so as to prevent it from exercising its lawful rights in other states via network television.

In *Head v. New Mexico Board of Examiners in Optometry,* 374 U.S. 424, 83 S.Ct. 1759, 10 L.Ed.2d 983, the Court considered a New Mexico statute which prohibited advertising by quoting prices or terms for the sale of eyeglasses. A New Mexico state trial court had enjoined a newspaper and a radio station, located in New Mexico but serving an area much of which was in Texas, from accepting or publishing a Texas Optometrist's advertising which violated the New Mexico statute. The Supreme Court of New Mexico affirmed [70 N.M. 90, 370 P.2d 811] and on appeal, the U.S. Supreme Court affirmed. The U.S. Supreme Court said:

"Without doubt, the appellants' radio station and newspaper are engaged in interstate commerce, and the injunction in this case has unquestionably imposed some restraint upon that commerce. But these facts alone do not add up to an unconstitutional burden on interstate commerce. As we said in *Huron Portland Cement Co. v. City of Detroit,* 362 U.S. 440, 80 S.Ct. 813, 4 L.Ed.2d 852 [78

4. *Hostetter v. Idlewild Bon Voyage Liquor Corp.*, 377 U.S. 324, 84 S.Ct. 1293, 12 L.Ed.2d 350.

A.L.R.2d 1294], upholding the application of a Detroit smoke abatement ordinance to ships engaged in interstate and international commerce . . ., it must be borne in mind that the Constitution when 'conferring upon Congress the regulation of commerce, . . . never intended to cut the States off from legislating on all subjects relating to the health, life, and safety of their citizens, though the legislation might indirectly affect the commerce of the country. Legislation, in a great variety of ways, may affect commerce and persons engaged in it without constituting a regulation of it, within the meaning of the Constitution.' * * *."

In *Head, supra*, the Court was considering only the general regulatory police powers of the State. In the case at bar we have Oklahoma's general regulatory police powers strengthened by the Twenty-First Amendment. In *California v. La Rue*, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342, the Court held that while the states require no specific grant of authority to legislate with respect to matters traditionally within the scope of the general police powers, the broad sweep of the Twenty-First Amendment, prohibiting the transportation or importation of intoxicating liquors into a state in violation of the state's laws, confers something more than the normal state authority over public health, welfare, and morals.

The mere fact that state action may have repercussions beyond state lines is of no judicial significance so long as the action is not within that domain which the Constitution forbids. *Osborn v. Ozlin*, 310 U.S. 53, 60 S.Ct. 758, 84 L.Ed. 1074 (1950); *Joseph E. Seagram & Sons v. Hostetter*, 384 U.S. 35, 86 S.Ct. 1254, 16 L.Ed.2d 336 (1966). A balance must be achieved between the lawful goal to be attained and the degree to which commerce outside the state is thereby incumbered.

Oklahoma's authority to regulate advertising the sale of alcoholic beverages, which in no way comes within the purview of interstate commerce, is not challenged. Although television stations are engaged in interstate commerce and Oklahoma laws prohibiting advertising the sale of alcoholic beverages (via television) have unquestionably imposed a restraint upon that commerce, these facts alone do not justify a holding they impose a constitutionally impermissible burden on interstate commerce. Even if the expanded authority of the State to regulate alcoholic beverages under the Twenty-First Amendment were not considered, the restraint imposed by the regulation would only be in conflict with the Commerce Clause if it were an "undue burden."

The only out of state burden imposed on anyone, other than the licensee, is the practical requirement that networks notify local affiliates of the time and placement of nationally televised liquor commercials. The Oklahoma television stations have the means and the ability to "block out" unauthorized commercials the same as they are able to "block out" any other national network programming they do not desire to telecast.

The purpose of advertising is to aid the marketing and distribution of the advertiser's product, in this case, wine. Advertising of liquor is an aspect of the liquor industry over which Oklahoma has chosen to exercise its regulatory powers. As stated in *Heublein, supra*, by reason of the Twenty-First Amendment a state is totally unconfined by traditional commerce clause limitations when it restricts the importation of intoxicants destined for use, distribution or consumption within its borders. And, as stated in *Hostetter v. Idlewild Bon Voyage Liquor Corp., supra* the Twenty-First Amendment and the commerce clause must each be considered in the light of the other and within the context of the issues and interests at stake in each individual case.

The issues and interests at stake in the case at bar place at cross-purposes the interests of Heublein, together with its advertising media, in the unencumbered distribution of its commercials and the interests of Oklahoma in the regulation of advertising of intoxicating beverages via television. Given the minimal interference with inter-

state commerce resulting from Oklahoma's exercise of its regulatory authority, we hold the interests of the State as established by the Twenty-First Amendment to be the superior.

Judgment of the trial court affirmed.

HODGES, C. J., LAVENDER, V. C. J., and WILLIAMS, BERRY, BARNES and DOOLIN, JJ., concur.

SIMMS, J., concurs in result.