Audie HAMBLETT, Paulette W. Baddley, Thomas Burse, Robert J. Swanton, Richard C. Watkins, Walter Huffman, on Behalf of themselves and a class of all other persons similarly situated, Plaintiffs,

v.

The BOARD OF SAVINGS AND LOAN ASSOCIATIONS OF the STATE OF MISSISSIPPI, Brad Dye, Individually and as a Member of the Board, Evelyn Gandy, Individually and as a Member of the Board, A. F. Summer, Individually and as a Member of the Board, W. D. Coleman, Individually and as a Member of the Board, Hamp King, Individually and as a Member of the Board, Heber Ladner, Individually and as Member of the Board, Walter Bullock, Individually and as an Officer of the Board, Bankers Trust Company, Bankers Trust Savings and Loan Association, American Savings and Insurance Company, Charles Carter, Individually and as the Representative of a class consisting of all Officers, Directors and Stockholders of Bankers Trust Company, C. D. Shields, Individually and as Representative of a class consisting of all Officers and Directors of the Bankers Trust Savings and Loan Association, and Chester Simms, Individually and as the Representative of a class consisting of all Officers, Directors and Stockholders of the American Savings and Insurance Company, Defendants.

No. DC 76–97–S.

United States District Court, N. D. Mississippi, Delta Division.

Feb. 28, 1979.

Mayo L. Coiner, Memphis, Tenn., for plaintiffs.

John M. Grower, Brunini, Grantham, Grower & Hewes, Jackson, Miss., for Bankers Trust Sav. & Loan Assn.

**160**

John H. Price, Jr., Thomas, Price, Alston, Jones & Davis, Jackson, Miss., for Hamp King.

Richard B. Wilson, Jr., Wise, Carter, Child, Steen & Caraway, Jackson, Miss., for American Sav. Ins. Co. and Chester Simms.

W. D. Coleman, Deputy Atty. Gen., Jackson, Miss., for State Bd. of Sav. & Loan Associations.

C. D. Shields, Jones, Shields & Woodall, Meridian, Miss., pro se.

Charles Carter, Jackson, Miss., pro se.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

Plaintiffs filed this class action on September 8, 1976. At that time, each plaintiff and each member of the proposed class was a depositor or investor in the Bankers Trust Savings and Loan Association (hereafter "defendant Association").

The class which plaintiffs seek to represent, consists of approximately 60,000 persons, who are said to hold deposits or investments in defendant Association aggregating approximately $210,000,000.00. When this suit was filed, the main office of defendant Association was situated at Jackson, Hinds County, Mississippi, and had numerous branch offices throughout the state.

In an action filed against defendant Association by a depositor and his wife in the Chancery Court, Hinds County, Mississippi, a Chancellor of the court, without notice or hearing, appointed a receiver for defendant Association. This occurred on Friday, May 7, 1976. The next day, Saturday, May 8, 1976, the appointment was vacated by the court.

This action was given extensive publicity and triggered what is commonly referred to as a "run" on defendant Association, resulting in the exhaustion of its liquidity.

Defendant, the Board of Savings and Loan Associations of the State of Mississippi (hereafter "State Board"), acting pursuant to Mississippi Statutory Law, directed its Executive Officer to apply to the Chancery Court for appointment as receiver of defendant Association.

The Chancery Court of the First Judicial District of Hinds County, Mississippi, acting upon the Executive Officer's application, on May 20, 1976, entered an order making the appointment. During the pendency of the depositors suit and the receivership proceedings, the Mississippi Legislature was called by the Governor into special session to consider the financial crisis then existing in the state. The legislature promptly adopted Senate Bill No. 2001. Miss.Code Ann. §§ 81–11–91 et seq. (1978 Cum.Supp.). The statute was signed into law the day of its enactment, June 20, 1976.

The statute provided for appointment of a conservator by the Chief Justice of the Mississippi Supreme Court, or, in his absence, the Presiding Justice of the court, for all state chartered associations subject to the newly enacted law. Honorable Neville Patterson, Presiding Justice of the Mississippi Supreme Court, in the absence of the Chief Justice, appointed Robert W. Warren conservator pursuant to statutory provisions.

Mr. Warren immediately entered upon the duties of the office and was in the process of reorganizing defendant Association when the action sub judice was initiated.

During the pendency of the action sub judice, the court entered an order staying the proceedings. The order was entered January 17, 1977. The stay was effective until September 17, 1977. The court directed the conservator to keep the court currently informed on all developments in the reorganization of defendant Association.

One exception to the stay related to consideration by the court of the question of subject matter jurisdiction. The court previously, sua sponte, at a hearing on December 20, 1976, questioned the court's subject matter jurisdiction of the action. The order of January 17, 1977, provided for submission of briefs on the jurisdictional question. These were received in due course.

Mr. Warren has subsequently submitted reports to the court and the court notes

that a successful reorganization of defendant Association has been accomplished. The details of the reorganization need not be here stated. They do not, in any way, relate to the jurisdictional issue.

After the commencement of the action sub judice, defendant Bankers Trust Company was adjudicated a bankrupt in the United States District Court for the Southern District of Mississippi. Bankers Trust Company is now in the process of reorganization under Chapter X of the National Bankruptcy Act (U.S.C. Title 11, Chapter X (§§ 501–676.)

Recognizing the exclusive jurisdiction of the Bankruptcy Court over the estate of the Bankers Trust Company, an order has been entered herein dismissing said defendant from the action sub judice. The order is dated September 28, 1978.

A controversy arose over the right of the Conservator to proceed with the reorganization of defendant Association outside of the bankruptcy proceedings since all of the issued and outstanding capital stock of defendant Association was owned by Bankers Trust Company and was a part of the bankrupt estate.

The matter was litigated in the United States District Court for the Southern District of Mississippi. On appeal, the United States Court of Appeals for the Fifth Circuit determined that defendant Association was not subject to the Bankruptcy Act and that the reorganization should proceed outside the bankruptcy court pursuant to state law. Judge Ainsworth's excellent opinion in the case on appeal[1] contains a concise and lucid recital of events involved in the matter.

During the progress of the reorganization of defendant Association, plaintiffs Audie Hamblett, Paulette W. Baddley, Thomas Burse, Robert J. Swanton, Richard C. Watkins and Walter Huffman, filed the action sub judice. Plaintiffs alleged that they invested various amounts of funds in defendant Association and had suffered damages on account of its closure which resulted from mismanagement and other illegal activities on the part of defendants acting in concert with each other. Plaintiffs sued the Board of Savings and Loan Associations of the State of Mississippi, Brad Dye, Evelyn Gandy, A. F. Summer, W. D. Coleman, Hamp King and Heber Ladner, individually and in their official capacity as members of the Board; Walter Bullock, individually and as an officer of said Board; Bankers Trust Company; Bankers Trust Savings and Loan Association; American Savings and Insurance Company, Charles Carter, individually and as the representative of a class consisting of all officers, directors and stockholders of Bankers Trust Company; C. D. Shields, individually and as representative of a class consisting of all officers and directors of the Bankers Trust Savings and Loan Association, and Chester Simms, individually and as the representative of a class consisting of all officers, directors and stockholders of the American Savings and Insurance Company.

The complaint contains ten (10) counts.

Count I charges a violation by defendant Association of the Securities Exchange Act.

Count 2 charges dereliction of duty by the State Board and its individual members and staff.

Count 3 charges coercion by the State Board and its individual members which resulted in the merger of defendant Association with other insolvent savings and loan associations.

Count 4 charges fraudulent and deceptive misrepresentations by the members of the State Board.

Count 5 charges unjust enrichment by the members of the State Board and its staff.

Count 6 charges certain illegal activities on the part of Bankers Trust Company.

Count 7 charges mismanagement of defendant Association by its parent company, Bankers Trust Company, its officers, directors and stockholders.

Count 8 charges mismanagement of defendant American Savings and Insurance Company.

1. *Matter of Bankers Trust Co.*, 566 F.2d 1281 (5th Cir. 1978).

Count 9 charges the deprivation of plaintiffs' property without due process of law.

Count 10 charges the deprivation of plaintiffs' contractual obligations in violation of plaintiffs' rights under the Constitution of the United States.

The complaint seeks to invoke the jurisdiction of this court for the adjudication of claims arising under the Constitution of the United States and certain Acts of Congress. Plaintiffs also seek to persuade the court to accept pendent jurisdiction over certain claims arising by virtue of state law, said to arise out of a common set of facts under the doctrine promulgated by the Supreme Court in *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

2. 15 U.S.C. 78aa, provides in part:

The district courts of the United States, and the United States Courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder.

3. 28 U.S.C. § 1331(a) provides:

The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States. (As this statute existed when complaint was filed, September 8, 1976. This statute was amended October 21, 1976.)

4. 15 U.S.C. 78j(b), provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

17 C.F.R. § 240.10b–5 stipulates that:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

Before proceeding with the instant litigation, the court must first determine whether subject matter jurisdiction exists. If the court does not have jurisdiction over the subject matter of the action, the action must be dismissed. The question of subject matter jurisdiction can and should be raised when the jurisdiction appears questionable.

The plaintiffs invoke jurisdiction pursuant to 15 U.S.C. § 78aa [2] and 28 U.S.C. § 1331 [3] for an alleged violation of the Securities Exchange Act of 1934, 15 U.S.C. 78j(b) and Rule 10b–5 promulgated pursuant thereto; [4] and the deprivation of rights secured plaintiffs by the Constitution of the United States. Jurisdiction is also invoked under 28 U.S.C. § 1343 [5] for violations of the Civil Rights Act, 42 U.S.C. § 1983. [6]

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

5. 28 U.S.C. § 1343(3) and (4) provides:

The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

6. 42 U.S.C. § 1983, provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

■ The court will first consider the question of whether plaintiffs' "investments"[7] in defendant Association constitute "securities" within the meaning of the Securities Act of 1933 and the Securities Exchange Act of 1934 (Securities Acts).

This question must be considered in the light of circumstances existing at the time of filing suit. Subject matter jurisdiction must exist as of that time. The events occurring since the filing of the action hereinbefore mentioned do not afford assistance to the court in deciding the issue. A recitation of subsequent acts have been incorporated herein to give the background to the litigation. *International Association of Machinists v. Central Airlines, Inc.*, 295 F.2d 209, 216 (5th Cir. 1961) quoting in footnote 20, at page 216, from *Osborn v. United States*, 22 U.S. 738, 9 Wheat. 738, 823, 6 L.Ed. 204 (1824).

The complaint alleges that plaintiffs and the members of the class they seek to represent purchased securities of and deposited funds in the defendant Association. The court must determine from the record herein, in light of the history of defendant Association, the exact nature and extent of plaintiffs' interest.

Plaintiffs charge that defendant Association, knowingly, willfully and maliciously engaged in false, misleading and deceptive advertising within and by means of instrumentalities in interstate commerce in violation of Section 10b of the Securities Exchange Act, 15 U.S.C. § 78j(b). *See also* Rule 10b–5, promulgated pursuant to Section 78j(b), (*see* footnote 4).

Defendant Association was organized and chartered as a stock company, May 15, 1957, and authorized to issue capital stock of 1,001,000 shares. This stock was designated as common or voting stock of the par value of one dollar per share. The authorized stock in its entirety was issued to defendant Bankers Trust Company. Bankers Trust Company was chartered pursuant to the Mississippi statute, April 15, 1957. Plain-

tiffs did not hold or own any stock in defendant Association when the action sub judice was commenced.

The Mississippi Legislature adopted, effective July 1, 1962, The Savings and Loan Law of 1962, Miss.Code Ann. §§ 81–11–1, et seq. (1972) (hereafter the "Act"). The Act provides that defendant Association and other associations holding stock charters should become subject to its provision and the supervision of the Board of Savings & Loan Associations (hereafter the "State Board"), Miss.Code Ann. § 81–11–19, et seq. (1972).

Section 81–11–3(a) of the Act provides:

When used in this chapter, the following words shall have the following meaning:

(a) "Association" shall mean a savings and loan association, building and loan association, or savings association subject to the provisions of this chapter.

■ The placing of defendant Association under the Act and subject to its provisions did not, however, in any way, change or impair its corporate powers or alter its characteristics as a stock company. Section 81–11–77 provides in part:

But nothing in this chapter shall be construed to impair or modify any lawful contract, property right or *existing charter of any corporation doing business as a savings and loan association on the effective date of this chapter.* (Emphasis supplied).

The contention is made that the interest possessed by plaintiffs in defendant Association at the time of the institution of this action, consisted of nothing more than a deposit of funds, that such interest could not be characterized as "share accounts" or "shares" in a "mutual" association, nor "stock shares" in a "stock" association.

Defendants have meticulously pointed out certain amendments made in the Mississippi Senate to the legislation before final

7. In the complaint, plaintiffs characterize their deposits of funds with the association to be investments or purchases of securities.

enactment. These amendments are reflected in the "Journal of the Senate of the State of Mississippi, Regular 1962 Session".

The Journal reflects, page 915, that Senator Bodron offered an amendment to Section 81–11–3(*1*).

The section prior to adoption of the amendment read:

"Share accounts", "shares", shall mean that part of the savings liability of the association which is credited to the account of the holder thereof and the words "share account", "account", "savings", and "shares" shall have the same meaning. Share accounts may be evidenced by passbook, certificate or shares.

Senator Bodron's amendment added a sentence, as follows:

The term "stock shares" shall mean ownership shares as distinguished from those terms above which apply to "members".

The amendment was adopted.

To the section entitled "Name of Association" § 81–11–17, the Journal shows at page 970, that Senator Smith offered an amendment which was adopted to distinguish between "a mutual company" and "a stock company". The amendment follows:

Every association that has not issued and is not authorized by its charter or any amendments thereto to issue *stock shares,* shall use the descriptive words "a mutual company" in connection with the use of its name, and every association which has issued or is authorized by its charter or any amendments thereto to issue *stock shares,* shall use the descriptive words "*a stock company*" in connection with its name. The above mentioned descriptive words shall not form a part of the association name but shall be used in every instance where the association name is written, printed or otherwise reproduced, or spoken in connection with all advertisements, announcements, notices, bills, placards, reports, signs, emblems, symbols, devices, letterheads, and like matter. Wherever reproduced, the descriptive words shall be of the same style of callig-

raphy as the association name and in size at least one-half (½) as large as the association name. (Emphasis added).

The record is not clear with regard to the nature of type of document held by each plaintiff as the result of depositing funds with defendant Association. The parties have stipulated, however, that Exhibits 2–7 attached to defendants' brief are documents held by one or more of plaintiffs. The certificates shown in Exhibits 2 and 4 (Form 10) appear to be certificates of deposits issued by Colonial Savings and Loan, a corporation acquired by defendant Association prior to the period here involved. These appear to be ordinary Certificates of Deposits.

Exhibit No. 3 appears to be a facsimile of a four year "Savings Certificate" currently earning annual dividends of 7½%, paid or compounded quarterly. The document certifies that the holder "is a member of Bankers Trust Savings and Loan Association, *a stock company, and holds a savings account of said Association, subject to its charter and bylaws and to the Laws of the State of Mississippi.*" (Emphasis supplied). Exhibit No. 5 is a facsimile of a "Six Year Savings Certificate", currently earning dividends of 7½%, paid or compounded quarterly. Otherwise this certificate contains language similar to that contained in Exhibit No. 3.

Exhibit No. 6 represents a "Quarterly Passbook" currently earning annual interest at 6% paid or compounded quarterly. Withdrawal is permitted at anytime subject to certain restrictions not here material. Exhibit No. 7 represents "One Year Savings Certificate". The certificate provides that the holder has subscribed to a savings account compounded to earn 7% annually. Exhibits No. 6 and No. 7 contain language similar to that contained in Exhibit No. 3, which refers to defendant Association as being a "stock company".

The jurisdictional question may be summarized as follows. Whether a deposit in a stock savings and loan association evidenced by a "passbook" or "savings certificate", on which a fixed "dividend" or stated rate of

"interest" is contracted to be paid uninfluenced by the profits, if any, realized or to be realized by the association from the use of the money and which does not give the holder any voice in the management of the affairs of the association, constitutes a "Security" within the meaning of the Securities Act of 1933 and the Securities Exchange Act of 1934.

The court must determine whether the particular financing relationship shown here to exist, constitutes a "security" within the meaning of the Securities Acts. *International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, et al. v. John Daniel*, 439 U.S. 551, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979) (hereafter *"Teamsters"*).

In order to make this determination "[t]he test is whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others." *S. E. C. v. Howey Co.*, 328 U.S. 293, 301, 90 L.Ed. 1244, 66 S.Ct. 1100, 1104 (1946). The test is to be applied in light of "the substance—the economic realities of the transaction—rather than the names that may have been employed by the parties." *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 851–52, 95 S.Ct. 2051, 2060, 44 L.Ed.2d 621 (1975).

The court is guided in its determination by the familiar canon of statutory construction that remedial legislation, such as the Securities Acts here involved, is to be construed broadly to effectuate its purposes, and "in searching for the meaning and scope of the word 'security' in the Act, form should be disregarded for substance and the emphasis should be on economic reality". *Tcherepnin v. Knight*, 389 U.S. 332, 336, 88 S.Ct. 548, 553, 19 L.Ed.2d 564, 569 (1967).

*Tcherepnin, supra*, involved withdrawable capital shares in an Illinois savings and loan association and the Supreme Court held such shares to be "securities" within the meaning of the Securities Exchange Act. Plaintiffs rely heavily on *Tcherepnin* and an Eighth Circuit case, *S. E. C. v. First American Bank & T. Co.*, 481 F.2d 673, 678 (8th Cir. 1973) which held that "capital notes", "certificates of investment" and "passbook savings accounts" were "securities" within the meaning of the Securities Act.

*Tcherepnin* is clearly distinguishable from the action sub judice. There the savings and loan association issued withdrawable capital shares pursuant to the Illinois Savings and Loan Act. These shares represented exclusively all of the association's capital. Here the defendant Association is a stock company. None of its stock is owned by plaintiffs; all of it is owned by the Bankers Trust Co. There each holder of a withdrawable capital share became a member of the association entitled to vote one share for each one hundred dollars of the aggregate withdrawal value of his account. Here, though referred to as "a member" of defendant Association in the passbook and savings certificate, the holder is not entitled to a voice of any nature in the affairs of the defendant Association. The management of the business is vested solely in the holder of its common stock. There the holders of withdrawal capital shares were not entitled to a fixed rate of return; here the holder of a passbook account or a savings certificate is entitled to a fixed rate of return. There the holders of withdrawable capital shares received dividends declared by the Association's board of directors, based on the association's profits; here the right to receive compensation for use of money deposited in defendant Association is based upon the fixed rate of return expressly stated in the passbook or certificate. The right to receive the fixed rate of return is not related in any way to profits of defendant Association. There each borrower automatically became a member of the association, but entitled to only one vote; here, borrowers do not become members of the Association and are not entitled to vote. There the right to make voluntary withdrawals is restricted by statute; here, the right of withdrawal is governed by the contract evidenced in passbook or savings certificate.

The *Tcherepnin* court based its judgment, at least in part, on the premise that the withdrawable capital shares under consideration possessed the essential attributes of

investment contracts as the term is used in section 3(a)(10) of the Securities Exchange Act of 1934 and as defined in *Howey* ("an investment of money in a common enterprise with profits to come solely from the efforts of others") *Howey, supra* 328 U.S. at 301, 66 S.Ct. at 1104.[8]

The court is of the opinion that the holding in *Tcherepnin* does not support a finding here that the "passbook" or "savings certificate" issued by defendant Association, constitutes securities within the purview of the Securities Acts.

In the case of *Securities & Exch. Com'n v. First American Bank and T. Co., supra,* without a clear discussion of the characteristics of the instruments involved, the court opined:

It is not disputed that First American did offer to sell or in fact did sell through the use of the facilities of interstate commerce, capital notes, certificates of investment, and passbook savings accounts. It is equally clear that for purposes of the Securities Act, these items are "securities."

481 F.2d at 678 (footnote omitted)

The *First American* court appears to have concluded that the documents there under consideration, i. e., capital notes, certificates of investment and passbook saving accounts, are "securities" within the meaning of the Securities Act of 1933, because of language used in the statute. In support of its conclusion, the court cited *Lehigh Val. Trust Co. v. Central Nat'l Bank of Jacksonville,* 409 F.2d 989 (5th Cir. 1969), where Judge Goldberg, writing for the court, held that an agreement pursuant to which the bank sold a participating interest in a loan, originated by the bank, to the trust company was a "security" within the meaning of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78(a), et seq.[9]

The "securities" involved in *Lehigh* and *First American* do not have the characteristics which are inherent in the "passbook" and "savings certificate" here involved. The court does not find them to be persuasive on the question here presented.

The court concludes that the passbooks and savings certificates issued to plaintiffs by defendant Association and upon which the action sub judice is predicated, are merely instruments which constitute evidence of principal and interest payments accruing by virtue of currency deposited in an account with defendant Association. As such, they are not "securities" within the meaning of the Securities Exchange Act. *See Burrus, Cootes, & Burrus v. MacKethan,* 537 F.2d 1262, 1265 (4th Cir.

---

8. In *Tcherepnin,* the court said:

Petitioners are participants in a common enterprise—a money-lending operation dependent for its success upon the skill and efforts of the management of City Savings in making sound loans. Because Illinois law ties the payment of dividends on withdrawable capital shares to an apportionment of profits, the petitioners can expect a return on their investment only if City Savings shows a profit. If City Savings fails to show a profit due to the lack of skill or honesty of its managers, the petitioners will receive no dividends. Similarly, the amount of dividends the petitioners can expect is tied directly to the amount of profits City Savings makes from year to year. Clearly, then, the petitioners' withdrawable capital shares have the essential attributes of investment contracts as that term is used in § 3(a)(10) and as it was defined in *Howey.*

389 U.S. at 338–39, 88 S.Ct. at 554 (footnotes omitted).

9. The full text of 15 U.S.C. § 78c(a)(10) reads as follows:

(a) When used in this chapter, unless the context otherwise requires:

(10) The term "security" means any note, stock, treasury stock, bond, debenture, certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit, for a security, or in general, any instrument commonly known as a "security"; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; but shall not include currency or any note, draft, bill of exchange or banker's acceptance which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited.

1976). *See also Bellah v. First American National Bank of Hereford, Texas*, 495 F.2d 1109, 1114–16 (5th Cir. 1974).

The determination that the court does not have jurisdiction of the action sub judice because the savings certificates and pass-books held by plaintiffs are not "securities" within the meaning of either the Securities Act of 1933 or the Securities Exchange Act of 1934, does not alone solve the jurisdictional problem.

Plaintiffs sue also under the Civil Rights Act, 42 U.S.C. § 1983, invoking jurisdiction pursuant to 28 U.S.C. § 1343(3).

Plaintiffs do not question the constitutionality of Senate Bill 2001, the vehicle through which defendant Association was placed in conservatorship. This statute was passed and became effective on June 20, 1976. Defendant Association was then in the hands of a receiver appointed by the Chancery Court of Hinds County, Mississippi, on May 20, 1976.

The Fifth Circuit said in *Henry v. First National Bank of Clarksdale*, 444 F.2d 1300, 1307–08 (1971):

> Federal district courts have jurisdiction of actions to redress the deprivation, under color of any state law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the federal constitution or any Act of Congress providing for the equal rights of citizens. . . . It is, of course essential to this "civil rights" jurisdiction that the deprivation of rights contested be "state action." The difficult problem has always been to pinpoint the boundary between state action and nonstate, or private, action. (Citations omitted) (Footnote omitted).

The question here presented is whether the deprivation of the rights[10] held by plaintiffs resulted from "state action" so as to confer jurisdiction on this court under the Civil Rights Act, 42 U.S.C. § 1983 via 28 U.S.C. § 1343(3).

Plaintiffs correctly concede that there was no constitutional barrier to adoption of Senate Bill 2001, though plaintiffs were deprived of their right to withdraw their funds from defendant Association. The right of the State of Mississippi to enact remedial legislation for the protection of its citizens in the savings and loan industry can hardly be questioned. *East New York Savings Bank v. Hahn*, 326 U.S. 230, 66 S.Ct. 69, 90 L.Ed. 34 (1945); *Veix v. Sixth Ward Bldg. & Loan Assoc. of Newark*, 310 U.S. 32, 60 S.Ct. 792, 84 L.Ed. 1061 (1940); *Home Building & Loan Assoc. v. Blaisdell*, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413 (1934).

Plaintiffs do not complain of The Savings and Loan Law of 1962, nor place its constitutionality in question.

The corporate defendants, Bankers Trust Savings & Loan Association, Bankers Trust Company and American Savings and Insurance Company, are private corporations. The individual defendants, other than the members of the Board of Savings and Loan Associations of the State of Mississippi, are private citizens acting in a private rather than a public capacity. The participation by these private defendants in the matters of which plaintiffs complain, does not constitute "state action", unless, in some remote way, the participation can be classified as "state action" because of involvement with state officers, that is to say, members and officials of the State Board.

As Chief Judge Brown said, in *Fulton v. Hecht*, 545 F.2d 540, 541–42 (5th Cir. 1977):

> [T]he proof must show significant state involvement in order to bring an otherwise private concern within the ambit of the Fourteenth Amendment. . . .
> The protective armor of the Fourteenth Amendment invoked under § 1983 is activated to prevent deprivation of rights secured by the Constitution and laws only when state action or action taken under state law is present.

The Supreme Court, speaking through Mr. Justice Clark on the subject of "state action" in a section 1983 setting, remarked in the opinion rendered in *Burton v. Wil-*

---

**10.** The right to withdraw with interest funds deposited with defendant Association.

*mington Parking Authority*, 365 U.S. 715, 722, 6 L.Ed.2d 45, 81 S.Ct. 856, 860 (1961) "[o]nly by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance."

One reason advanced by the state defendants to defeat a Section 1983 claim filed pursuant to the jurisdictional statute, 28 U.S.C. § 1343(3) is that the jurisdictional statute applies only if "personal" rights, as opposed to "property" rights, are allegedly impaired. This question was laid to rest in *Lynch v. Household Finance Corp.*, 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972), when the court said:

> This Court has never adopted the distinction between personal liberties and proprietary rights as a guide to the contours of § 1343(3) jurisdiction. Today we expressly reject that distinction.

405 U.S. 542, 92 S.Ct. 1117 (footnote omitted)

The right which each plaintiff possessed, prior to the closure of defendant Association, was to surrender the savings certificate or passbook, as the case might be, for redemption pursuant to contract provisions. This is the right which has been impaired. This impairment was brought about by the action of defendant State Board, its members and officers, when a receiver was sought for defendant Association. In making the application for and effecting the appointment of a receiver, defendant State Board, its members and officers were acting pursuant to state law, i.e., The Savings and Loan Law of 1962.[11] It is evident that this law was passed in an effort to safeguard the savings of Mississippi citizens and others in state chartered savings and loan associations. The law passes constitutional muster in every respect. *East New York Savings Bank v. Hahn, supra; Veix v. Sixth Ward Bldg. & Loan Assoc. of Newark, supra; Home Building & Loan Assoc. v. Blaisdell, supra.*

It is clear from the facts and circumstances here involved that "state action" sufficient to trigger jurisdiction under 28 U.S.C. § 1343(3) is not present in the deprivation of plaintiffs' rights to withdraw their funds from defendant Association.

If state action is to be found to justify the court's jurisdiction, such must be done under the facts and circumstances said to exist prior to the closure of defendant Association.

Plaintiffs rely upon the allegations contained in Counts 9 and 10 of the complaint to support their contention that they have been deprived of the use of their property— funds deposited with defendant Association—without due process of law, thus giving rise to an action for violation of their civil rights.

Counts 9 and 10 allege:

Count 9: Deprivation of Property Without Due Process of Law

1. Plaintiffs hereby reiterate and rely upon the description of the parties as set forth in Section III, above, and the allegations of Counts 1, 2, 3, 4, 5, 6, 7 and 8, above, of this Complaint as fully as though recited herein verbatim and further allege:

2. Each and every Defendant, acting individually and within their public or corporate offices and acting in collusion and conspiracy with each other, have engaged in a gross dereliction of duty to the plaintiffs and/or willful misconduct.

3. These violations and derelictions of duty made necessary the action of the Mississippi Legislature amending the Mississippi Code and resulting in the subsequent appointment of a conservator for the Defendant Association and other State chartered savings and loan associations.

4. This Legislation and the appointment of said conservator has deprived the Plaintiffs of the use of their money invested in or deposited in the Defendant Association, thereby depriving the Plain-

---

11. Miss.Code Ann. §§ 81–11–1, et seq. (1972), now repealed, however, by Chapter 445, Laws 1977.

tiffs of their property and other rights secured to them by the laws of the United States, without due process of law as guaranteed to Plaintiffs by the Fourteenth Amendment to the Constitution of the United States.

5. At all times, the Defendant Board and the Defendant members of the Board were acting under color of State law in that they were abusing their offices and the authority granted to them by the laws of Mississippi.

6. Whereby Plaintiffs have been injured in the deprivation of property in the amount of approximately $50,000,-000.00, the exact extent of which can be determined only by discovery.

Count 10: Deprivation of Contractual Obligations in Violation of Plaintiffs' Rights Under the Constitution of the United States

1. Plaintiffs hereby reiterate and rely upon the description of the parties as set forth in Section III, above, and the allegations of Counts 1, 2, 3, 4, 5, 6, 7, 8 and 9, above, of this Complaint as fully as though recited herein verbatim and further allege:

2. Due to the intentional, willful and malicious activities of each and every Defendant as alleged above, acting under color of State law and in their public and corporate offices, and acting individually and in collusion and conspiracy with each other, the capacity of the Defendant Association to continue its operations was destroyed and it was necessary that the Defendant Association be placed under the management of an appointed conservator, thereby impairing the contractual obligations between the Plaintiffs and the Defendant Association in violation of Article I, Section 10, Clause 1 of the Constitution of the United States, which provides in part: "No state shall . . pass any law . . . impairing the obligations of contracts."

3. Whereby the Plaintiffs have been injured in the amount of approximately $50,000,000.00, the exact extent of which can be determined only by discovery.

It is well to remember that the plaintiffs are mere depositors in defendant Association. They were entitled only to a return of their money with interest pursuant to the contract evidenced by their passbooks and investment certificates. They did not hold any interest in the assets of defendant Association in the sense of a shareholder. The court is not concerned with any common law right of action which the shareholders of defendant Association, or its receiver or conservator, might have against the officers and/or directors of defendant Association, Bankers Trust Company or American Savings and Insurance Company, the Board of Savings and Loan Associations of the State of Mississippi, its officers and members, for mismanagement, or gross dereliction of duty of the affairs of defendant Association.

Plaintiffs allege that the violation and dereliction of duties aforesaid made necessary the action of the Mississippi Legislature in amending the Mississippi Code (Senate Bill 2001) which resulted in the appointment of a conservator for defendant Association thereby impairing the contractual obligations between plaintiffs and defendant Association, in violation of Article I, Section 10, Clause 1 of the Constitution of the United States, which provides in part: "No State shall . . . pass any Law . . . impairing the Obligation of Contracts." As the court has observed, however, the facts here alleged fail to muster a challenge to the constitutionality of either of the Savings and Loan Act of 1962, or Senate Bill 2001, under which plaintiffs' contractual obligations with defendant Associations were impaired.

The court has concluded that the complaint does not allege the existence of facts sufficient to charge defendants with violation of the Civil Rights of plaintiffs within the meaning of 42 U.S.C. § 1983, so as to confer jurisdiction upon the court pursuant to 28 U.S.C. § 1343(3).

The court finds that the action sub judice does not present a federal question which acts to invest the court with jurisdiction to try the case. Since no federal question

exists, the court cannot entertain the state claims.

Accordingly, an order will be entered dismissing the action without prejudice for lack of subject matter jurisdiction.